[Civ. No. 8198. Third Dist. May 14, 1953.]

ELNA S. TAYLOR, Respondent, v. NOEL NEWTON, SR., et al., Appellants.

Charles A. Christin for Appellants.

Raymond A. Leonard and Ben F. Griffith for Respondent.

SCHOTTKY, J.—Plaintiff commenced an action against defendants above named, seeking to have it decreed that defendants N. H. Development Company and The Newton Company be declared to be the *alter ego* of defendant Noel Newton, Sr., and to recover from said defendants the sum of $4,575.52 alleged to be due plaintiff on a judgment rendered against Noel Newton, Sr., on September 23, 1948.

The complaint alleged that on November 2, 1935, plaintiff loaned defendant Noel Newton, Sr., the sum of $2,500 upon his promise to repay said amount on or before three years from said date; that plaintiff filed suit against defendant Noel Newton, Sr., in the Superior Court of Los Angeles County on September 23, 1942, and judgment was rendered in her favor on September 13, 1943, for the sum of $3,382.85; that no part of said judgment having been paid, plaintiff, on July 29, 1948, filed an action in the Superior Court of Butte County against defendant Noel Newton, Sr., based upon said unsatisfied judgment, and on September 23, 1948, judgment was entered in favor of plaintiff and against said defendant for the sum of $4,563.52; that nothing has been paid upon said judgment, and on November 7, 1949, an execution was issued upon said judgment, which execution was returned by the sheriff wholly unsatisfied, and that said judgment is still unsatisfied.

The complaint further alleged that defendant Noel Newton, Sr., is insolvent, and has divested himself of all property out of which the judgment can be satisfied by the following chain of events: That for a long time prior to 1938 and ever since, defendant Noel Newton, Sr., has engaged in general real estate dealings, etc.; that on or about November 22, 1938, the defendant Noel Newton, Sr., caused to be incorporated the defendant N. H. Development Company; that defendant Noel Newton, Sr., has at all times personally owned all of the issued capital stock of the defendant corporation, to wit, 100 shares at $1.00 par value; that defendant Noel

Newton, Sr., at all times has been the president and general manager of defendant corporation; that the officers and directors are dummies, they being paid or unpaid employee relatives of defendant Noel Newton, Sr., to wit, his two sons, daughter, and wife. Plaintiff alleges further that no stockholders' meetings or election of any board of directors or officers has ever been held, or any adoption of by-laws had or considered; that all office furniture, fixtures, books and business of said defendant corporation are kept and maintained by Noel Newton, Sr., at his home; that the incorporation of defendant corporation was a mere fraudulent plot, plan, scheme and conspiracy to hinder, defraud, cheat and delay creditors, and, in particular, the plaintiff; that the corporation is merely Noel Newton, Sr.'s *alter ego* through which Noel Newton, Sr., may act in his business affairs, using it as a cloak or shield to elude creditors' claims; that on February 28, 1948, Noel Newton, Sr., caused to be formed for his own purposes The Newton Company, a partnership comprised of John R. Newton and Noel Newton, Jr., his sons, Ida Mae Richardson, his daughter, and Elda Mills Newton, his wife; that this partnership was formed for the same fraudulent purposes as the defendant corporation, and is subject to the sole and exclusive control of defendant Noel Newton, Sr.; that in reality neither this partnership nor the defendant corporation was formed for lawful purposes; that the profits from the partnership go to the defendant corporation, and the profits from the defendant corporation go to defendant Noel Newton, Sr.; that the above named relatives of Noel Newton, Sr., who make up the partnership and officers and directors of defendant corporation are really under the exclusive control and direction of defendant Noel Newton, Sr., and have no financial interest in said partnership or defendant corporation except to collect their earnings as employees; that in furtherance of this fraudulent scheme, at numerous times and ever since October 19, 1938, the defendant Noel Newton, Sr., has deeded and transferred various real properties to the defendant corporation and the partnership, these transfers being made without consideration, and therefore fraudulent as to plaintiff, a creditor of Noel Newton, Sr.; that to better cloud and obscure the property transactions, the defendant corporation agreed in writing to sell, and the partnership did in the same instrument agree to buy from the defendant corporation, all of its property at $2,000 per acre, payable if and when the partnership selected

any of the properties described in the agreement; that the partnership was also to farm all of the cultivable land and pay over the profits from the crops to the defendant corporation, in addition to the purchase price of said land; that Noel Newton, Sr., was to deposit in escrow the 100 shares of stock in the defendant corporation, which stock was to be held subject to large fictitious claims of unknown amounts in favor of his wife and his attorney at law; that as a result of the foregoing fraudulent scheme, plot, and plan, the profits and benefits from Noel Newton, Sr.'s *alter egos*, the defendant corporation and the partnership, plaintiff is unable to recover any of said benefits or profits to apply on her judgment; that plaintiff is unable to reach any assets of defendant Noel Newton, Sr., since he is insolvent, he having secreted his assets in the foregoing manner, and that if the affairs continue to be conducted by defendant Noel Newton, Sr., the corporation, and partnership as separate entities, plaintiff will suffer irreparable injury and detriment, and all assets of said business which should be used to satisfy plaintiff's claim will be lost forever. For a second cause of action plaintiff alleges the foregoing, and, in effect, that the defendant corporation and the partnership were set up merely as instrumentalities of defendant Noel Newton, Sr., to use in defrauding his creditors, and that all of the property and assets of the defendant corporation were transferred and disposed of to the partnership so that the defendant corporation and Noel Newton, Sr., might further shield themselves from the lawful debts and defraud their lawful creditors; that the placing in escrow of the 100 shares of stock in the defendant corporation by defendant Noel Newton, Sr., was for the ostensible purpose of making profits and earnings accruing to said stock subject to first and second fictitious liens of unknown amounts in favor of defendant Noel Newton, Sr.'s wife and attorney at law, respectively; that this was done to further the fraudulent scheme and plan of placing assets out of the reach of lawful creditors of Noel Newton, Sr.

Defendants filed a general and special demurrer, and among the grounds of demurrer was one that the action was barred by the provisions of sections 337 and 338 of the Code of Civil Procedure. The demurrer was overruled and the defendants filed an answer in which they denied various material allegations of the complaint and denied also that the debt was ever owed; that the defendant corporation was not a valid one; that there was any fraudulent scheme or

plan on their part to defraud creditors; and also set up the statute of limitations as a defense (Code Civ. Proc., §§ 337, 338 and 343).

Following a trial before the court sitting without a jury, the court found substantially as follows:

1. That the various property transactions between defendants Noel Newton, Sr., and. the corporation and partnership were as alleged.

2. That the taking of the 100 shares of stock in the defendant corporation and placing in escrow subject to liens of unknown amounts by defendant Noel Newton, Sr., was as alleged.

3. That Noel Newton, Sr., does preside over, manage and control defendant corporation, and that there were no meetings, by-laws, etc. of said corporation, and that the records, fixtures, and office of said corporation are in the home of defendant Noel Newton, Sr., as alleged.

4. That none of Noel Newton, Sr.'s relatives, who make up the officers and directorate of the defendant corporation, have any financial interest therein other than to collect wages, as alleged.

5. That Noel Newton, Sr., has used the defendant corporation for his own purposes, and the separateness and individuality of the defendant corporation and Noel Newton, Sr., does not exist, and has not existed since on or about October 19, 1939, and that these circumstances unjustly deprive plaintiff of money due her, in that Noel Newton, Sr., has divested himself of all of his property, thereby rendering him insolvent, as alleged.

6. That the defendant corporation is the *alter ego* of the defendant Noel Newton, Sr.

7. That the partnership, Newton Company, is not the *alter ego* of defendant Noel Newton, Sr., nor are it or its members parties of any fraudulent actions.

8. That plaintiff did recover the alleged judgments against defendant Noel Newton, Sr., as alleged.

9. That the defendants Noel Newton, Sr., and corporation are jointly and severally indebted to plaintiff.

From the foregoing facts the court concluded that the N. H. Development Company was the *alter ego* of defendant Noel Newton, Sr., and that said defendants were jointly and severally liable to plaintiff for any debt or judgment outstanding against defendant Noel Newton, Sr. Judgment was entered in accordance with said findings and conclusions,

and defendants Noel Newton, Sr., and N. H. Development Company have appealed from said judgment.

Appellants first contend that the court erred in overruling their demurrer. They argue that any cause of action must be predicated on one which arose in 1938 when appellant Noel Newton, Sr., caused appellant N. H. Development Company to be incorporated, as it was then that appellant Noel Newton, Sr., was alleged to have acted fraudulently. Therefore, argue appellants, the complaint in the instant action was filed on September 11, 1950, and that the action was barred by the statute of limitation, whether sections 337, or 338, or 343 of the Code of Civil Procedure are the applicable sections. Appellants seem to assume that the instant action is one to set aside a fraudulent conveyance but, as respondent correctly points out, she is not seeking to set aside any transfer, fraudulent or otherwise, but is merely seeking to have the fictitious identity of appellant corporation disregarded, and hence sections 337, 338 and 343 have no application here as the action is based on a 1948 judgment obtained by plaintiff against appellant Noel Newton, Sr.

Appellants' next and principal contention is that the evidence is insufficient to support the judgment. They argue first that the evidence does not support the finding that appellant corporation was the *alter ego* of appellant Noel Newton, Sr. However, the record clearly shows the following facts:

1. Appellant Noel Newton, Sr., holds all the stock in appellant corporation.

2. This stock is subject to liens of unknown amounts in favor of appellant's wife and attorney.

3. Appellant Noel Newton, Sr., is the president and general manager of the corporation.

4. The directors and officers of the appellant corporation are members of appellant Noel Newton, Sr.'s family who act for little or no compensation under his control and direction.

5. There were no formal meetings held, either stockholders' or directors'.

6. There were no adequate or accurate records of the corporation's affairs kept.

7. There are no by-laws available.

8. The office of the corporation is at the home of appellant Noel Newton, Sr.

9. Appellant Noel Newton, Sr., transferred Rancho Golden and other property to appellant corporation without receiving any consideration therefor.

758

10. Property of the corporation was transferred to the defendant partnership, no consideration being received therefor.

The following statement by the court in its memorandum opinion is fully supported by the record:

"It is the opinion of the Court that a preponderance of the evidence in this case establishes that the N. H. Development Company, a corporation, is the alter ego of Noel Newton, Sr., and that the facts in this case are such that to adhere to the fiction of a separate existence of the said corporation would promote an injustice to the creditors of said Noel Newton, Sr., and particularly to the plaintiff creditor herein."

The law in California as to the doctrine of *alter ego* is well summarized in *Kohn* v. *Kohn*, 95 Cal.App.2d 708, at page 718 [214 P.2d 71]:

"As stated in 6A California Jurisprudence, page 75: 'It is the law in California as elsewhere that, although a corporation is usually regarded as an entity separate and distinct from its stockholders, both law and equity will, when necessary to circumvent fraud, protect the rights of third persons and accomplish justice, disregard this distinct existence and treat them as identical.' The issue is not so much whether, for all purposes, the corporation is the 'alter ego' of its stockholders or officers, nor whether the very purpose of the organization of the corporation was to defraud the individual who is now in court complaining, as it is an issue of whether in the particular case presented and for the purposes of such case justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form. (1 Fletcher, Cyc. Corporations, pp. 134, 136, 143 and 165.) The case law of California is in support of this generally recognized view, the cases expressing the doctrine of disregard of the entity in varying language, sometimes rather broad and sometimes more narrow. The leading and most often cited case in California, *Wenban Estate, Inc.* v. *Hewlett*, 193 Cal. 675, 696 [227 P. 723] states it as follows: 'While it is the general rule that a corporation is an entity separate and distinct from its stockholders, with separate, distinct liabilities and obligations, nevertheless there is a well-recognized and firmly settled exception to this general rule, that, when necessary to redress fraud, protect the rights of third persons, or prevent a palpable injustice, the law and equity will intervene and cast aside the legal fiction of independent corporate existence, as distinguished from

those who hold and own the corporate stock, and deal with the corporation and stockholders as identical entities with identical duties and obligations.' In *Continental Securities Etc. Co.* v. *Rawson*, 208 Cal. 228, 238 [280 P. 954], after stating the doctrine substantially as it appears above, the court said: 'When the corporation is organized or perpetuated for the particular purpose of carrying out the plans of partners or associates in business, the same rule has been held to apply. (Citations.) Whether the corporation be deemed a "one man" corporation or, as here claimed, a "two man" corporation, the rule would be the same and the two essential elements must be present.' (The significant elements were stated to be (1) control, and (2) a state of facts upon which an adherence to the separate entity would be unjust.) In a recent case, *Katenkamp* v. *Superior Court*, 16 Cal.2d 696, 700 [108 P.2d 1], Justice Traynor expresses the doctrine thusly: '. . . while a corporation is usually regarded as an entity separate and distinct from its stockholders, both law and equity will, whenever necessary to circumvent fraud or protect the rights of third persons disregard this distinct existence and treat them as identical.' [Citing 10 California cases.]''

In *Wenban Estate, Inc.* v. *Hewlett*, 193 Cal. 675, the court said at page 698 [227 P. 723]:

"True, there is no showing or claim of fraud in the instant case on the part of Caroline S. Wenban or the corporation plaintiff. Still, as previously indicated, it is not necessary that actual fraud be shown. It is sufficient if a refusal to recognize the fact of the identity of the corporate existence with that of the individual would bring about inequitable results. All of the facts and circumstances surrounding the inception of and attending the controversy in suit bring the case clearly within the two requirements declared in *Minifie* v. *Rowley, supra* [187 Cal. 481 (202 P. 673)], to be sufficient to constitute the cause of action stated in the cross-complaints of the several appellants."

In the case of *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, the court said at page 522 [203 P.2d 522]:

"The cases mentioned illustrate in a factual context similar to that before us the rule that where the recognition of the fiction of separate corporate existence would foster an injustice or further a fraud the courts will refuse to recognize it. (*Stark* v. *Coker*, 20 Cal.2d 839, 846 [129 P.2d 390]; *Puccetti* v. *Girola*, 20 Cal.2d 574, 578 [128 P.2d 13]; *Shea* v. *Leonis*, 14

Cal.2d 666, 669 [96 P.2d 332].) It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice. (*Wenban Estate, Inc.* v. *Hewlett,* 193 Cal. 675, 698 [227 P. 723] ; *Minifie* v. *Rowley,* 187 Cal. 481, 488 [202 P. 673].) Here confusion would be promoted and an unjust result be accomplished if the maintenance of the two entities controlled by the same persons and having an identical name were permitted to frustrate a meritorious claim.''

And in *Hillman* v. *Hillman Land Co.,* 81 Cal.App.2d 174, the court said at page 183 [183 P.2d 730] :

''. . . A corporation may be but the mere instrumentality through which, for their convenience, the individuals who own all the capital stock transact their business. Looking to substance rather than to form the law and equity will hold the corporation obligated for the acts of the sole owners of its stock.'' (Cases cited.)

See, also, *Stark* v. *Coker,* 20 Cal.2d 839 [129 P.2d 390] ; *Judelson* v. *American Metal Bearing Co.,* 89 Cal.App.2d 256 [200 P.2d 836].

Appellants contend also that there is no evidence that appellant Noel Newton, Sr., now owes or ever owed plaintiff any money. However, the pleadings show that plaintiff alleged the original obligation and also alleged the filing of the actions which resulted in the judgments of 1942 and 1948. The complaint also alleged that nothing had been paid on the 1948 judgment and the amount due thereon. These allegations were not denied in appellants' answer and no contention was made at the trial that anything had been paid.

Equally without merit is appellants' contention that there was no evidence that either an execution was issued against Noel Newton, Sr., or that it was returned unsatisfied. The complaint made these allegations and the only denial was on lack of information and belief. It is well settled that a matter of which defendant has personal knowledge, or a matter which is presumptively within his knowledge, cannot be denied on information or belief, but must be answered positively or such denial may be disregarded as an evasion. (21 Cal.Jur., § 98, p. 148, and cases cited.) The issuance of the execution and the filing of the return were also matters of public record and could not be denied solely on information and belief. (21 Cal.Jur., § 101, p. 150.)

No other points raised require discussion.

We are satisfied that the complaint states a good cause of action and that the trial court's conclusion that appellant N. H. Development Company was and is the *alter ego* of appellant Noel Newton, Sr., is abundantly supported by the evidence and by the authorities. It is clear from the record that the trial court was fully justified in concluding, as it did conclude, that to adhere to the fiction of a separate existence of appellant N. H. Development Company would promote an injustice to the creditors of appellant Noel Newton, Sr.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 9, 1953.